The court will come back into session and the case next to be argued is United States v. Bond. Counsel, you may proceed. Good morning, Your Honor. Roger Hanson of Santa Ana for the appellant, Bond. Yes, please. He leads the court. I've practiced appellate law for most of my life and I find this case to be unusual and it seems to have a couple unique issues that have never appeared in my cases before and kind of juxtapose on each other to create, to me, a very constitutional set of issues. And quickly speaking, my client, along with some other associates, decided to get into the electrical power business, buying and selling electrical energy back in the late 1900s, kind of the California Enron situation, I suppose, and conceived this by hiring or advertising for an independent selling organization to raise money for him. And a gentleman by the name of Johnson and an associate responded to the ad and said that they had a law firm in San Diego, California, that would advise them and they put together a contract which said that they would obey all federal and state laws in the raising of this money. And my client had nothing to do with the generation of this contract but, of course, did sign it. Getting right to the issue that's in front of us, the real question is whether there was a Brady violation at all in failing to call Johnson as a witness. There was no suppression, obviously, of any evidence. How do you make a Brady violation out of the government's failure to call as a witness? Well, I concede, Your Honor, it's not the traditional Brady violation, but it has, I think, the essence of that. Because the government represented that they were going to call this witness by a letter they represented before the trial started. I think Mr. Jaspers, my opponent here, authored that letter. And then the opening day of trial, they had Mr. Johnson as a witness. But couldn't you have called a witness? You knew who he was, obviously. Well, I was not the trial attorney. Well, I meant your side. Well, I agree. I agree, and I think that is probably an ineffective assistance counsel issue which may have to be deferred to a 2255 petition. However, I tried to crank it into something this court could take a look at because trial counsel told why she didn't do it. And if she was ineffective in not doing that, I think the court could probably reach that, decide that issue. I assume that the reason that she didn't want to call him was that she thought that he was in possession of testimony that would be helpful to Mr. Bond, but much better to take him on cross-examination and lead him through the exculpatory evidence than to have to sponsor him and question him on direct. Yes, Your Honor, that is correct. That's her position. So she made a tactical decision to let the government call him, seeing his name on the list, assuming that they would. But going back to Judge O'Scanlon's question, when she decided or saw on the first day of trial that the government was not going to call him, why didn't she just drop a Rule 17 subpoena on him and say, okay, if they won't do it, then I guess I'll have to do it the hard way? Well, number one, I don't think she realized until the government rested that they weren't going to call him. In other words, you don't know, you don't have these witnesses sitting in the courtroom, so she was not cognizant of the fact that he was not going to be called. But certainly, and I know this lady, and I said to her, I said, why don't you address the district judge when the government rested without calling him with the fact that you wanted to have him here and see if you could get a continuance in the case or something like that. She says, well, I didn't know where he was, and I might tell the court it's not in the record, but this lady was suffering from big health problems at the time. As a matter of fact, the sentencing process after the conviction was delayed for about a year because she had intensive surgery, gynecological problems, and things of that nature. So whether that explains it or not, I don't know. But I guess from a Brady standpoint, the issue that we have to decide is whether or not there was a suppression of exculpatory evidence by the government. And where I'm struggling to, and I agree with you, I think this is kind of a unique theory under Brady and Giglio, the theory would be that by not calling him, the act of not calling him, amounted to the suppression of what would otherwise have been favorable testimony to the defendant. Yes, that's my position. The problem is that our cases say that if you know enough facts to know that the witness may have helpful testimony, and you know who that witness is, the government has complied with its Brady obligation, and it is now incumbent upon the defense to make use of that. Well, the only explanation I can give is the one she gave, that she assumed that he would be called as a witness, and therefore she intended to use the cross-examination avenue as opposed to calling him as her witness. And it then backfired, and she didn't do anything about it. And so I think that it raises the issue whether you can get to under, you know, U.S. v. Pirro, which says basically you can't do a 2255 where the direct appeal is going. But I'm trying to crank into, as best I can, a situation where this court could evaluate whether this was in effect. What do we know about what proffer was there as to what Mr. Johnson would have said had he testified that would have been favorable to Mr. Bond, sufficient to overturn the conviction? Well, I've set forth excerpts of what I contend is a fairly honest evaluation of what he said in Florida. In the deposition or the testimony in the Florida case? Yes, he testified in Fort Lauderdale, Florida, as a government witness. And defense counsel had been provided with the name of the court reporter who was in possession of the transcript of that testimony? Well, I concede, Your Honor, that she had the transcript. Oh, she had the transcript? She had the transcript available to her. Yes, she did. And I had been retained to do his appeal eventually, and because of all the delays, I had a chance to review this Johnson testimony. And I said, gee, this is something that I think surely should have been presented to this jury. And I tried to do what I could by seeking bail on appeal for him. And this district judge always diverted me into saying, well, if he's an ill man, he has Parkinson's disease, let's get him some medical aid, and he would never address the bail issue. And so I never got a chance to address all this testimony which should have come in. But wouldn't the way to address it have been a motion for a new trial? Well, of course, that has to be done within seven days. That's true. You're out of time. And so the thing that I'm trying to emphasize to the court is I am troubled by a law firm in San Diego helping this boiler room outfit, which is a totally independent selling organization, alter these contracts to elevate the percentage of commissions from some 15 percent to some 60 percent and conceal it by use of an asterisk. And Bond had nothing to do with it. My client didn't know anything about this. They were doing this thing independently on their own. And I guess I'm troubled by, strangely enough, both the major duo of the three-man San Diego firm have resigned from the state bar with no charges pending. And I've been trying to find out why that is, and I can't find that out. And, you know, I say, gee, labor through undergraduate program, law school, study for the bar, take the bar exam. If you have the idea that you may want to get away from law and run a McDonald's hamburger stand for a little bit, you can go on to inactive status and pay a small amount and keep your law license. Not only one, but two of them have now resigned. And I've tried to find out from the remaining one, and I can't do it. So it makes me very suspicious. I sometimes think, well, could my government have muscled this law firm to step aside and turn for not charging him as co-conspirators in this matter? So I think it's a case of unique issues, which I hope the court will take into account, the dilemma of actually Mr. Bond, who is a victim of whether it's ineffective assistance of counsel, of the trial lawyer not asking for a continuance to get this witness or telling the government we want this witness or whatever. She didn't do it, and I admit that, and she knew about the transcript. Counsel, why don't you reserve the balance of your time, and we'll hear from the government. Okay, Your Honor. Thank you very much. May it please the Court, Patrick Jaspers for the United States. Your Honors, after a two-week trial, Ilya Bond was found guilty by a jury on all 12 counts with which he was charged, and this appeal provides no reason why this court should disturb that verdict and no reason why this court should reverse the 96-month sentence imposed by the district court. The government did not violate Brady by not calling a witness that the government did not need and a witness who would not have helped the defendant. What about the representation that the government apparently made or is alleged to have made that it would call the witness? Your Honor, there are three instances that the defendant is pointing to. The first is the district court had a trial order that required the government to identify any informants that the government had, and the government identified Mr. Johnson and two others and said it was likely to call these witnesses at trial. In disclosing Giglio information, the government again identified Mr. Johnson and said that the government intended to call him as a witness. And then the third situation was that on the government's witness list, Mr. Johnson was listed as a witness. The witness list was produced on the morning of trial. And it was the government's intention to call Mr. Johnson as a witness. Mr. Johnson was under subpoena, contrary to what Mr. Bond says in his reply brief. Well, under your subpoena, right? Under our subpoena. And the reply brief says Mr. Johnson was never under subpoena by the government, and this was all an elaborate scheme to trick defense counsel. He was under subpoena. He was ready to testify. The government decided that it had proved its case and did not want to prolong a two-week trial by presenting cumulative evidence. And that was a tactical decision that I think is made in courtrooms every day. There's no statute or rule or case law that requires the government to call every witness on its witness list or every witness whom it might have months before trial indicated in a letter that it was intending to call. There were other witnesses that the government didn't call. There were exhibits that were marked that were not introduced. That's a fairly standard practice in court. And there's simply nothing in the record to support Mr. Bond's claim that this was somehow some strategy to trick the defendant out of presenting a witness who. . . Mr. Jefferson, is there anything in the record? I'm not familiar with Judge Anderson's practice specifically, but is there anything in the record that suggests that if defense counsel had simply asked the district judge to order the government to produce Mr. Johnson since he was under subpoena that Judge Anderson would or would not have done so? That's hypothetical. I'm not sure I can answer. There was a similar situation where the government called a witness named Steve Roscoe and on cross-examination, defense counsel tried to do what you were alluding to earlier, where instead of subpoenaing the witnesses themselves, you present your case through cross-examination. And the questions that were being asked on cross went beyond the scope of direct, and Judge Anderson enforced the rule that said you can't do that. And if you want to bring him as a witness, he said you should subpoena him and call him as a witness. No, no, no. And I was talking with Mr. Hanson about that. But what I'm really asking, and I'm just drawing on my own trial experience, when I found myself in that situation, I've never had a judge refuse to order the government to produce a witness listed on the government list who was otherwise under subpoena and available to the court on request of defense counsel who decided that they wanted to have that witness even though the government wasn't going to call him. But do we know here? We don't know, Your Honor. There's nothing in the record, and I don't know Judge Anderson's practice. The issue just never came up. They never asked. They never asked, we need time to find him, or we'd like to compel the government to produce him. And no request for a continuance so that the government could subpoena him. Correct. That's correct. The second prong under a Brady violation is whether the suppressed evidence would have been favorable to the defendant. There was no suppressed evidence, but furthermore, Mr. Johnson's testimony would not have been favorable to the defendant. It would further have buttressed the extensive evidence the government presented proving Mr. Bond's guilt. Mr. Bond has included the entire transcript from the Southern District of Florida trial in the appellate excerpts. It's there for the court to read. And how anyone could read that testimony and conclude that that evidence, that testimony exonerated Mr. Bond, I think simply defies credulity. Mr. Johnson testified that Mr. Bond was aware that sales commissions were 61%, not 15%, like the investors were told, and not 45%, which you would find if you looked in the fine print next to the asterisk. Mr. Johnson testified that Mr. Bond provided false information that he knew was going to go out to induce the victims to invest. Mr. Johnson testified about four conference calls with investors in which Mr. Bond himself made material misrepresentations and also remained silent while material information was not disclosed. Some of the investors in those phone calls did subsequently invest more money, and they testified that they relied on things that they heard during those conference calls. And so the simple fact of the matter is even if Mr. Johnson had been called, it wouldn't have made a difference. The defendant raises for the first time in his reply brief, he says, well, if there wasn't suppression, then maybe this was ineffective assistance. The law in the Ninth Circuit is that ineffective assistance is generally an issue that should be raised on habeas. There are limited instances where the record is complete, and it can be handled in direct appeal. But certainly it's not appropriate to raise it in a reply brief to which the government has had no chance to respond. To the extent the court is going to entertain this issue at all, however, it's not ineffective assistance to not call a witness who's not going to help your client. Regarding sufficiency of the evidence, the government presented extensive evidence that showed that Mr. Bond did know what was going on. It's true, he may not have known every last thing that Mr. Johnson was doing, but there was extensive testimony and evidence that he did know about numerous misrepresentations that were made to defraud the investors. As to sentencing, the court correctly calculated the advisory guidelines, it correctly considered the factors under Section 3553, and it imposed a sentence well below the statutory maximum. Unless the court has any additional questions. No further questions, counsel. Mr. Hanson, you have a little bit of reserve time. Thank you, Your Honor. Well, I still find it troubling to have the court avoid in any way, or the government avoid in any way, the count number one, the conspiracy. There could not have been a conspiracy between this independent selling organization and my client, because they operated with their own contract prepared by the San Diego law firm,  If that conspiracy count fails, then all the other counts where they talked about getting money from everybody has to fail too, because Mr. Bond did not participate in getting the money. That was done by the independent selling organizations. That's counts one, two through eight. And then, of course, there were, I think, three counts of telephone conversations, but that was in general after the money had been obtained from them. And I suppose there's the usual thing in annual reports of companies. They will prognosticate what is going to happen next year. General Motors, General Electric, maybe a bad year today, but our cars are going to be better next year, and they're puffing and some of these things. I don't think it's a criminal puffing that took place in this case. Thank you, counsel. But I think it's a serious case, and perhaps you ought to issue a written opinion, Your Honor, to handle these. All right. Thank you, counsel. Thank you very much. The case just argued will be submitted for decision.
judges: Thompson, O'scannlain, Tallman